IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG

CORNELIUS TUCKER,

      Plaintiff,

v.                                    Case No. 6:06-cv-00139

DARRELL HARPER, Manager,
U.S. Treasury, Bureau of Public Debt,

      Defendant.

## PROPOSED FINDINGS AND RECOMMENDATION

On February 24, 2006, Plaintiff, an individual incarcerated in the State of North Carolina, filed a Complaint (docket sheet document # 2) and an Application to Proceed Without Prepayment of Fees (# 1). This matter was referred to the undersigned United States Magistrate Judge for submission of proposed findings and a recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 1915A, the court is required to screen each case in which a prisoner requests in forma pauperis status and seeks redress from a governmental entity, officer, or employee. On screening, the court must recommend dismissal of the case if the complaint is frivolous, malicious, or fails to state a claim upon which relief can be granted. A "frivolous" case has been defined as one which is based on an indisputably meritless legal theory.

<u>Denton v. Hernandez</u>, 504 U.S. 25 (1992).  A "frivolous" claim lacks "an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989).

A claim is "malicious" when it contains allegations which the plaintiff or petitioner knows to be false, it is part of a longstanding pattern of abusive and repetitive lawsuits, or it contains disrespectful or abusive language.  <u>See</u> <u>In re Tyler</u>, 839 F.2d 1290, 1293 (8th Cir. 1988); <u>Crisafi v. Holland</u>, 655 F.2d 1305, 1309 (D.C. Cir. 1981); <u>Phillips v. Carey</u>, 638 F.2d 207 (10th Cir. 1981).  Thus, a claim is malicious if it is repetitive or evidences an intent to vex the defendant(s) or abuse the judicial process by re-litigating claims decided in prior cases.

A complaint fails to state a claim upon which relief can be granted if "after accepting all well-pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief."  <u>Veney v. Wyche</u>,293 F.3d 726 (4th Cir. 2002)(section 1983 complaint dismissed under 28 U.S.C. § 1915 for failure to state a claim upon which relief could be granted).  However, the court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."

Title 28, United States Code, section 1915(g) further provides as follows:

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained in any facility, brought on action or appeal in a court of the United States that was dismissed on grounds that it is frivolous, malicious or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). Commonly known as the "three strikes" rule of the Prison Litigation Reform Act of 1995, the statute abrogates prisoners' entitlement to bring civil actions in forma pauperis after having three or more prior actions dismissed as being frivolous, malicious, or for failure to state a claim. It does not, however, prohibit such prisoner from proceeding with the civil action after paying the required filing fee in full.

**PLAINTIFF'S APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES**

This is the ninth lawsuit filed by Plaintiff in this United States District Court since May of 2005. All of the cases filed by Plaintiff concern the same subject matter - the alleged deprivation of United States Savings Bonds. Six of Plaintiff's cases have been dismissed as being frivolous and for failure to state a claim. In the instant case, Plaintiff has not alleged that he is under imminent danger of serious physical harm. Accordingly, under 28 U.S.C. § 1915(g), the undersigned proposes that the presiding District Judge **FIND** that Plaintiff cannot proceed in forma

3

<u>pauperis</u>.

Therefore, it is respectfully **RECOMMENDED** that the presiding District Judge **DENY** Plaintiff's Application to Proceed Without Prepayment of Fees (# 1). In light of the recommended dismissal of Plaintiff's Complaint, however, it is further respectfully **RECOMMENDED** that Plaintiff not be required to pay the $250 filing fee.

## **FACTUAL BACKGROUND AND PLAINTIFF'S PRESENT COMPLAINT**

Plaintiff's present complaint is filed as an action under the Federal Tort Claims Act, 28 U.S.C. § 1346, 2671-2680, against Darrell Harper, an employee of the United States Treasury Department's Bureau of Public Debt, whose office is located in Parkersburg, West Virginia, within the jurisdiction of the United States District Court for the Southern District of West Virginia. The present Complaint alleges in pertinent part:

I.  Claimant Tucker purchased U.S. Treasury notes/bonds. 149 total. (4) separate batches bought between 2003 thru 2005. By and through CCB Bank and Wachovia bank in Durham, NC. On Dec. 3, 2004, state prison guards illegally destroyed all of Tucker's prison cell property, including 30 bonds total $1,500.00.

II. Tucker had not authorized his federally appointed attorney from NC James Craven . . . to mail the bonds to Polk Prison. Craven nor Polk acct/admin J. Orwin and his cousin, Jeri Wagner, whom he had named as beneficiary in the 30-bonds only purchase refused to complete the PDF 2243 forms for bonds reissuances and defendant misappropriate relief/remedy by erecting an obstacle course. The proximate result leading to Tucker denied

4

reimbursement cash surrender since Dec. 04.
(# 2 at 1).

Through the assistance of the United States Attorney's Office for the Southern District of West Virginia, the undersigned has obtained documentation from the Bureau of Public Debt (hereinafter the "BPD"), which the undersigned believes to be helpful to the understanding of the factual background of Plaintiff's case. The documents received from the BPD were filed separately as docket sheet document # 5. The undersigned will refer to various exhibit numbers from that document throughout this Proposed Findings and Recommendation. A brief summary of the material facts follows:

On or about December 12, 2003, on behalf of Plaintiff, Plaintiff's mother, Odessa N. Tucker, purchased eight (8) $50 series EE savings bonds and one (1) $50 series I bond for a total of $250. Those bonds were jointly registered to Plaintiff and his mother. (# 5, Ex. 1). Sometime in April of 2004, Plaintiff's attorney, James B. Craven, III, purchased 30 series EE $100 savings bonds for a total of $1,500. Those bonds were registered in Plaintiff's name, with Jeri Wagner, who apparently is Plaintiff's cousin, listed as the beneficiary on those bonds. (Ex. 3). In November of 2004, Mr. Craven apparently purchased another batch of series EE bonds for Plaintiff. That batch consisted of 20 $100 bonds, purchased for a total amount of $1,000. (Exs. 5, 6). Thus, the total purchase price for the bonds in Plaintiff's name at that

time was $2,750.

On or about December 21, 2004, Plaintiff wrote a letter to the BPD requesting that, in light of his mother's death, the bonds jointly registered in his name and his mother's be re-issued in his name alone.  Plaintiff also requested that the BPD re-issue the 30 bonds purchased in April of 2004, because they had been stolen, lost or destroyed during a search and seizure of property from his prison cell.

According to Plaintiff, Mr. Craven had mailed those bonds to him at the prison, without Plaintiff's permission.  Plaintiff alleges that the bonds were located in a book that was seized from his cell during a search on or about December 3, 2004.  Plaintiff also requested that Jeri Wagner be removed as the beneficiary on those bonds.  Finally, Plaintiff requested that all of the re-issued savings bonds be mailed to Mr. Craven.  (Ex. 4).  Plaintiff made the same request on or about January 6, 2005.  (Ex. 5).

On or about February 8, 2005, April Kessell, a customer service assistant at the BPD, wrote Plaintiff a letter enclosing a record of the bonds that had been purchased in Plaintiff's name between January of 2003 and January of 2005.  The letter also provided a PD F 1048 form, to facilitate the re-issuance of lost or missing bonds, and a PD F 4000 form for the re-issuance of the bonds on which Plaintiff's deceased mother was named.  The letter also provided instructions for filing these forms.  (Ex. 6).

6

On or about March 31, 2005, S. Wingrove, another customer service assistant at the BPD, wrote Plaintiff a letter instructing him on how to complete a PD F 1048 form.  The letter stated, "[a]ll persons named on the bond must sign and have their signatures certified according to the instructions.  We will also require a statement from the Warden at Polk Youth Institution concerning his knowledge of the bonds."  (Ex. 7).

On or about June 4, 2005, Plaintiff wrote a letter to the BPD indicating that he had mailed two PD F 1048 forms that had been completed and notarized on May 10 and May 11, 2005.  The letter also requested copies of certain U.S. Treasury Department circulars and requested another printout of his bond registrations.  (Ex. 8).

On June 13, 2005, Patty Grossnickle, a customer service specialist at the BPD, wrote Plaintiff a letter in which she indicated that they had not received any completed PD F 1048 forms from him, and that the forms that were initially sent to him had been returned as undeliverable.  Thus, she enclosed new copies of the forms, indicating that they "must be completed in accordance with the instructions set forth and signed in the presence of a certifying officer."  The letter further stated:

> We will also require a statement from the person who last had possession of the missing bonds, if someone other than an individual named in the registration.  The enclosed PD F 2243 may be used for this purpose.  That person should also sign in the presence of a certifying officer.

7

As stated in our letter dated February 8, 2005, we will need a certified copy of Odessa N. Tucker's death certificate.  Death certificates must be certified or sworn to by the state or local registrar, under seal or stamp, as true and correct copies taken from the official records.

We're always willing to help a customer verify the status of savings bonds in the case of loss, theft or destruction, but due to the millions of bonds records in this office, we do not furnish complete listings of a customer's holdings.  If you feel you are missing bonds other than those attached to the PD F 1048, please furnish additional identifying information, such as different issue dates or social security numbers that would be shown on the bonds.  In the case of gift bonds, the purchaser's social security number is sometimes used.

You stated your attorney had possession of your bonds in your letter dated August 17, 2004.  It is important that you delete the serial numbers of any bonds shown on the PD F 1048 that are in your possession or can otherwise be accounted for.

* * *

As requested, I am sending Department Circulars, Nos. 2-98, 3-80 and 530.  There is not a Department Circular 300.

(Ex. 10).[1]

At some point, Plaintiff apparently submitted a Freedom of Information Act request to the BPD.  However, based upon the record before the court, the undersigned does not believe that the court is in possession of the FOIA request.  In an undated document entitled "FOIA Particularized Response," however, Plaintiff states,

---

[1]   It should be noted that, by June of 2005, Plaintiff had already instituted three of his lawsuits in this court, naming employees of the BPD, along with government and prison officials from North Carolina, as defendants.

inter alia:

> This case is particular in that as a prisoner I'm restrained from exercising any right to verify bonds or have anybody file any statements I cannot force nor seek any judicial expedient remedy, as could a person in free society settings. <u>Wherefore I request that due to compelling special circumstances you apply less stringent standards of diligent efforts, but afford me resolvement</u>. To: Relieve me of unnecessary undue hardship. I simply had my federal lawyer Craven to purchase $7,000.00 in EE series bonds. Already I owned $250.00 totaling $7,250.00 in a good faith measure to reduce opportunity to lose money.

> However, such adverse collateral consequences incurred as a result of this agency refusal to verify/docket/file the Feb. 3, 2005 90 bonds order-purchase[2] and to grant bond reissuances.

(Ex. 14)(emphasis in original).

In that document, Plaintiff also cites to section 353.90 of the Treasury Department's regulations, which provides that the Commissioner of the Public Debt may waive or modify any provision of the regulations governing BPD operations and procedures in order to relieve a person of "unnecessary hardship." 31 C.F.R. § 353.90. In essence, then, Plaintiff is requesting that the BPD waive or modify its requirements to allow Plaintiff's bonds to be re-issued without the requisite proof of loss.

Attached to the "FOIA Particularized Response" was a June 3, 2005 letter from James P. Orwin, Administrative Officer at the North Carolina Department of Correction facility where Plaintiff

---

[2] In January of 2005, Plaintiff, through his attorney, purchased an additional 90 series EE $100 bonds, which cost $4,500. (Ex. 18).

9

was incarcerated, addressed to a Mr. Covington (purportedly Plaintiff's cousin). The letter stated:

> Dear Mr. Covington
>
> Enclosed are one hundred and ten (110), one hundred dollar series EE United States Savings Bonds payable to your cousin Cornelius Tucker, Jr. The bonds are divided in two groups. The first group is made up of twenty (20) bonds serial numbers "C 794763044 EE" sequentially through serial number "C 794763063 EE." The second group of bonds is made up of ninety (90) bonds serial number "C 798901250 EE" sequentially through serial number "C 79801339 EE."
>
> The bonds were sent to Cornelius by his attorney James B. Craven. Cornelius asked that the bonds be forwarded to you for safe keeping. The bonds have been mailed certified mail so we can provide Cornelius with a return receipt confirming delivery. You are encouraged to contact me at (919) 575-3070, ext 202 should you have any questions concerning the enclosed Savings Bonds. Thank you.

(Ex. 14). According to the letter, a copy was placed in Plaintiff's prison file. (Id.)

The first group of bonds described in this letter appear to be the 20 bonds purchased for Plaintiff by his attorney in November of 2004, for the purchase price of $1,000.00. The second group of bonds described in the letter appear to be the 90 bonds purchased for Plaintiff by his attorney in January of 2005, for the purchase price of $4,500. Therefore, based upon this letter, it would appear that, as of mid-June 2005, $5,500 worth of the Plaintiff's bonds were in the possession of his cousin, Mr. Covington.

On or about July 7, 2005, Darrell Harper, the Manager of the Accrual Services Division of the BPD, and the defendant named

10

herein, wrote a letter to Plaintiff, which stated as follows:

This is in response to your letters requesting information regarding United States Savings Bonds registered in your [name?] alone and with Odessa N. Tucker who is now deceased as coowner and with Jeri Wagner as beneficiary.  This also acknowledges receipt of your Freedom of Information Request and Form PD F 1048 and the death certificate for Odessa N. Tucker.  The Form PD F 1048 and the death certificate were received in this office on June 20, 2005, and the Freedom of Information Request was received on June 27, 2005.

As requested, I am again enclosing a list of the savings bonds issued in your name.  It is noted that this information has been provided to you on numerous occasions.[3]

The Form PD F 1048 which you submitted is not acceptable because the savings bonds were not described by serial number.  Therefore, I will need the enclosed Form PD F 2243 signed as indicated; however, your signature need not be certified.

In support of the application, I will need statements from the following persons on the enclosed Forms PD F 2243:

James B. Craven
James P. Orwin
Debra Tucker
Jeri Wagner

Each person should provide their knowledge of the whereabouts of the savings bonds and how they were lost.  If the savings bonds are in the possession of any of the above named person[s], we should be so advised.

Upon receipt of all of the forms properly signed and certified in accordance with the instructions, further attention will be given to your request.

(Ex. 15).

---

[3]   The undersigned notes that the itemized list of bonds registered in Plaintiff's name that is attached to this letter does not include the bonds purchased in January 2005.

On or about July 12, 2005, Plaintiff mailed a letter to Mr.
Harper indicating:

> Jeri Wagner admits now having the $250.00 batch that my
> mom's name is own[ sic; on] . . . . Therefore, the only
> bonds actually destroyed are the April/June 2004
> $1,500.00 batch of 30-ee bonds listed, destroyed at Polk
> when Polk destroyed my property Dec. 3, 2004.  I had
> those due to Craven got angry and mailed those to me.  I
> put them in my cell.  During cell seizure, I assume they
> were destroyed.  They are gone.

(Ex. 16).

On July 17, 2005, Mr. Harper responded to Plaintiff's letter
and verified the purchase of the 90 $100 Series EE bonds in January
of 2005, and further verified that all of the bonds, with the
exception of the bonds purchased in December of 2003, were
initially mailed to James Craven.  The response then provided a
specific checklist for Plaintiff to complete regarding which set or
sets of bonds were missing.  The response provided yet another
itemized listing of the bonds purchased in Plaintiff's name.  (Ex.
18).

On or about July 29, 2005, Plaintiff wrote another letter to
Mr. Harper.  Parts of the copy of that letter that was provided to
the court are illegible.  However, the part that is readable
requests that Mr. Harper re-issue the 30 lost bonds solely in
Plaintiff's name, and also that Mr. Harper contact James Orwin to
mail Plaintiff the 110 bonds, and to do the same with Jeri Wagner,
who allegedly had possession of the other 9 bonds that were co-
owned by Plaintiff's mother.  (Ex. 19).

On or about August 5, 2005, Plaintiff mailed a letter to Mr. Harper in which he stated that he had mailed the PD F 2243 forms to James P. Orwin, Jeri Wagner, and James B. Craven, III.  Plaintiff indicated that these people refused to remit the forms back to him. The letter also made threats indicating that, once Plaintiff was released from prison, he would go to the BPD office to "handle his business by any means necessary to receive my money on the spot" and that he was holding Mr. Harper "personally liable."  (Ex. 20).

On or about November 15, 2005, Mr. Harper sent Plaintiff a letter enclosing yet another copy of the list of bonds registered in his name, and enclosing another set of forms to be completed in order to have the April 2004 bonds re-issued.  (Ex. 21).

Most of the other documents provided to this court by the United States Attorney's Office from Plaintiff's file at the BPD appear to be related to the lawsuits he has filed in various jurisdictions.  However, there are several PD F 2243 forms located in the file.  These forms, one of which purports to have been executed by Jams P. Orwin (Ex. 26), and one of which purports to have been executed by Jeri Wagner (Ex. 32), are of questionable validity.

## ANALYSIS

Title 31, United States Code, section 3125 provides for relief for the "loss, theft, destruction, mutilation or defacement of an obligation identified by number and description."  31 U.S.C. §

13

3125.   31 C.F.R. § 353.25 provides that "[i]n all cases, the savings bond must be identified by serial number and the applicant must submit satisfactory evidence of the loss, theft or destruction . . . ."  31 C.F.R. § 353.25.  31 C.F.R. § 353.26 further provides:

> (a) If the serial numbers of the lost, stolen, or destroyed bonds are known, the claimant should execute an application for relief on the appropriate form and submit it to the Bureau of Public Debt, Parkersburg, WV 26101.
>
> (b) If the bond serial number is not known, the claimant must provide sufficient information to enable the Bureau of Public Debt to identify the bond by serial number. See § 353.29(c).  The Bureau will furnish the proper application form and instructions.
>
> * * *
>
> (d) The application must be made by the person or persons (including both coowners, if living) authorized under these regulations to request payment of the bond.  In addition:
>
> > (1) If the bond is in beneficiary form and the owner and beneficiary are both living, both will ordinarily be required to join in the application.
>
> * * *
>
> (e) If the application is approved, relief will be granted either by the issuance of a bond bearing the same issue date as the bond for which the claim was filed or by the issuance of a check in payment.

31 C.F.R. § 353.26.

31 C.F.R. § 353.29(a) further provides that "[t]he Bureau of the Public Debt will adjudicate claims for the lost, stolen or destroyed bonds on the basis of records created and regularly maintained in the ordinary course of business."   31 C.F.R. §

14

353.29(a).   As noted by Plaintiff in his "FOIA Particularized Response," the Commissioner may waive these regulations to avoid unnecessary hardship, but is not obligated to do so.  31 C.F.R. § 353.90.

Registered owners of United States savings bonds are bound by the provisions of federal laws and Treasury regulations, which have the force and effect of law, concerning ownership and transfer of such bonds.  See, *e.g.*, In re Reiner's Estate, 106 N.E.2d 94 (Ohio 1952).  Thus, Plaintiff is required to comply with these Treasury regulations, unless they are waived.

The long and short of Plaintiff's Complaint is that he is attempting to hold Darrell Harper liable for Plaintiff's failure to properly file the necessary paperwork to have his lost savings bonds re-issued.  Plaintiff has requested that the BPD waive the requirements and allow the re-issuance, notwithstanding the failure to file the proper documents, simply because he is incarcerated.

Based upon a review of the records produced by the BPD, Plaintiff has, on several occasions, been provided the required forms for the re-issuance of his bonds, and instructions for the completion thereof.  He has also been provided, on numerous occasions, with a record of the bonds registered in his name alone, or in conjunction with someone else.  The bond records list the serial numbers for each bond registered in Plaintiff's name.  Thus, Plaintiff has in his possession all of the required information

15

needed for the re-issuance of the bonds.

However, Plaintiff has been unable to obtain properly executed statements from the persons who have been in possession of his savings bonds or who would have knowledge concerning the loss of those bonds. Therefore, Plaintiff has asked the BPD to waive the requirement that he provide such evidence of loss, and has even requested that the BPD, and Mr. Harper in particular, obtain the statements for him.

The BPD's requirement that Plaintiff comply with the procedures for re-issuance of savings bonds is neither negligent, nor deliberately discriminatory. Plaintiff has not demonstrated that Mr. Harper has breached any duty owed to Plaintiff. Thus, Plaintiff cannot state a claim under the Federal Tort Claims Act[4]. Nor has Plaintiff demonstrated that Mr. Harper has violated any of Plaintiff's constitutional or civil rights, as sporadically alleged in Plaintiff's documents. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state a claim upon which relief can be granted.

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge **DISMISS** this civil action under

---

[4]    The undersigned also notes that, while the documents provided by the BPD do include what appear to be two claims forms for filing a claim under the FTCA (Exs. 44 and 45), Plaintiff has not demonstrated that he exhausted the available administrative remedies <u>prior</u> to filing this lawsuit on February 24, 2006. Accordingly, the failure to exhaust such remedies, alone, would require the dismissal of this civil action. <u>See</u> 28 U.S.C. § 2675.

28 U.S.C. § 1915A for failure to state a claim.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Joseph R. Goodwin, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(e) and 72(b), Federal Rules of Civil Procedure, the parties shall have ten days (filing of objections) and then three days (service/mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the district court and a waiver of appellate review by the circuit court of appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984). Copies of such objections shall be served on the opposing party, Judge Goodwin, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff and Assistant United States Attorney Stephen M. Horn.  The Clerk is further directed to mail a copy of the exhibits contained in docket sheet document # 5 to Plaintiff.

    July 18, 2006
        Date                      Mary E. Stanley
                               United States Magistrate Judge

18